UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

D'ANGELO JARMAL OWENS,

                Plaintiff,                      Case No. 1:23-cv-784

v.                                         Honorable Robert J. Jonker

ADDIE BRISKE et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*.

## I.      Removal from the Mediation Program

In an order (ECF No. 4) entered on August 24, 2023, the Court referred the case to the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program and stayed the case for any purpose other than mediation.

The order staying proceedings contemplates that counsel for the defendants—typically the Michigan Department of Attorney General representing employees of the Michigan Department of Corrections (MDOC)—will enter a limited appearance for purposes of the early mediation process. When one or more defendants is not an employee of the Michigan Department of Corrections (MDOC), however, effecting notice of the early mediation opportunity proves to be more difficult and is not always possible.

Defendants Briske, Mason, Bellinger, Monroe, McGlone, Dankfert, Stone, and Clouse are, apparently, employees of the MDOC because the Michigan Department of Attorney General has

entered a limited appearance on their behalf. A review of the docket indicates that, to date, neither Defendant Dalton nor an attorney has entered a limited appearance on her behalf. At this time, the Court cannot conduct a complete mediation where neither Defendant Dalton nor counsel has appeared on her behalf. The protocol governing the early mediation program does not contemplate partial settlements. Thus, the Court cannot proceed with mediation under the early mediation protocol. Accordingly, the Court will remove this case from mediation and lift the stay that was entered to facilitate mediation.

## II.    Preliminary Review of Plaintiff's Complaint

The next step in moving this case toward resolution is preliminary review of the complaint under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA). The PLRA requires the Court to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). Section 1915(e)(2) specifically provides that such screening can occur "at any time." *See* 28 U.S.C. § 1915(e)(2); *see also* 28 U.S.C. § 1915A(a) (noting that the court "shall review, before docketing, if feasible, or, in any event, as soon as practicable after docketing," complaints filed by prisoners seeking "redress from a governmental entity or officer or employee of a governmental entity").

The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Addie Briske, Jack Bellinger, Nicki Monroe, and Unknown Clouse for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, any

2

claim, under the First or Fourteenth Amendments against remaining Defendant Stone arising out of Stone's processing of Plaintiff's grievance against Defendant McGlone.

Plaintiff's Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical need against Defendants Candi Mason, Nathan McGlone, Unknown Dalton, Unknown Dankfert, and Unknown Stone and Plaintiff's First Amendment retaliation claims against Defendants Mason and Stone will remain in the case.

### III.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF personnel: Nurses Addie Briske, Candi Mason, and Unknown Dankfert; Nurse Practitioner Unknown Dalton; Nurse Supervisor Jack Bellinger; Health Unit Manager Nicki Monroe; Corrections Officer Nathan McGlone; Sergeant Unknown Stone; and Assistant Deputy Warden Unknown Clouse. All Defendants are named in their respective personal capacities.

Plaintiff alleges that Corrections Officer Rucker shut Plaintiff in his cell door on May 20, 2020. (Compl., ECF No. 1-3, PageID.12, ¶¶ 1–10.) That incident is the subject of a separate lawsuit against Rucker. *Owens v. Briske*, No. 1:22-cv-443 (W.D. Mich.). The present lawsuit focuses on the Defendants' subsequent deliberate indifference to the injuries Plaintiff suffered when he was pinned by the closing cell door.

After the incident on May 20, Plaintiff immediately submitted a healthcare request form for injuries to his back. (Compl., ECF No. 1-3, PageID.12.) Defendant Mason was the first to respond. She sent Plaintiff a self-care pamphlet along with a written statement explaining that, due to the COVID-19 state of emergency, only serious medical concerns would be evaluated. (*Id.*)

Dissatisfied with Mason's response, Plaintiff immediately submitted another healthcare request form. (*Id.*) An appointment was scheduled for May 29, 2020, with Defendant Briske. (*Id.*, PageID.13.) Defendant McGlone also attended the healthcare appointment. (*Id.*)

When Plaintiff arrived at the appointment, Defendant Briske informed Plaintiff that Defendant McGlone told Briske that McGlone directly observed Plaintiff exercising his upper body on the yard and jumping off the top bunk. (*Id.*) Based on that information, Briske informed Plaintiff that she believed Plaintiff was "faking." (*Id.*)

Plaintiff told Briske that McGlone was lying, to no avail. (*Id.*) Her examination was particularly rough and caused Plaintiff pain. (*Id.*) At one point, Plaintiff brushed Briske's hand away. (*Id.*) Briske threatened to write a misconduct report if Plaintiff touched her again. (*Id.*) Plaintiff advised Briske that he would rather see the doctor and asked for some pain medication. (*Id.*, PageID.14.) Briske refused to supply any pain medication or schedule an appointment with the doctor. (*Id.*)

The next day, Plaintiff submitted another healthcare request. (*Id.*) Apparently, pursuant to that request, Plaintiff was scheduled for a June 9, 2020, appointment with Nurse Doan. (*Id.*) Nurse Doan conducted a physical examination, provided Plaintiff pain medication, and scheduled an appointment with the doctor. (*Id.*)

McGlone again attended the appointment. Plaintiff reports that McGlone again lied to the nurse about seeing Plaintiff "working out on the small yard." (*Id.*) Nurse Doan agreed to put the comments in the report, but did not alter the medication decision or the decision to schedule an appointment with the doctor. (*Id.*)

Plaintiff was treated by Dr. Crompton on June 12, 2020.[1] Dr. Crompton prescribed pain medication and provided Plaintiff a special accommodation detail for a bottom bunk. (*Id*.)

On June 15, 2020, Plaintiff filed a grievance against Defendant McGlone for providing false information to healthcare staff and conspiring with others to deny Plaintiff medical care. (*Id*.) Defendant Stone pulled Plaintiff out for a Step I grievance interview on two separate occasions.[2] (*Id*.) Plaintiff contends that Stone attempted to intimidate Plaintiff into "signing off" on the grievance filed against Defendant McGlone. (*Id*.)

Plaintiff's back problem flared up again in the middle of July. On the morning of July 15, 2020, Plaintiff sent a healthcare request seeking treatment because his back had "gave out the night before." (*Id*., PageID.15.) Within two hours, Defendant Mason summoned Plaintiff to discuss the problem. (*Id*.) Plaintiff explained that he was concerned that he might fall and hit his head if his back continued to give out. Mason noted that Plaintiff was able to walk and, thus, must be doing better. (*Id*.) Plaintiff acknowledged that his condition had improved from the night before. (*Id*.) Apparently based on that improvement, Mason determined that Plaintiff's condition was not emergent and would not evaluate Plaintiff until he paid the $5.00 copayment.[3] (*Id*.) Plaintiff

---

[1] Plaintiff reports that he saw Dr. Crompton on June 6, 2020. That date is suspect because it would place his appointment with Dr. Crompton before the referral by Nurse Doan. In Plaintiff's previous lawsuit, he attached Dr. Crompton's treatment notes to the complaint. Those notes indicate that Dr. Crompton saw Plaintiff on June 12. MDOC Clinical Encounter Notes, *Owens v. Briske*, No. 1:22-cv-443 (W.D. Mich.), (ECF No. 1-5, PageID.57–59.) The Court offers June 12 as the treatment date only for the sake of preserving the chronological order of this account. The actual date of the appointment is not material to the Court's consideration of Plaintiff's claims.

[2] MDOC policy requires the grievance coordinator to assign an appropriate respondent. MDOC Policy Directive 03.02.130 ¶ EE (eff. Mar. 18, 2019). Policy also requires the respondent to interview the grievant "to clarify issues of merit, to further an investigation, or otherwise aid in the resolution of the grievance at Step I." *Id.* ¶ GG. An interview is not required if the prisoner "refuses to participate in the interview." *Id.*

[3] It is difficult to understand Plaintiff's allegation regarding the copayment without knowing the MDOC's policy directives regarding healthcare. Under MDOC Policy Directive 03.04.101, Prisoner Health Care Copayment (eff. May 2, 2022), a prisoner is required to pay a $5.00

offered to pay, but even then Mason declined to see him, indicating that she would simply give Plaintiff a self-care pamphlet with exercises. (*Id*.)

On August 3, 2020, while Plaintiff was attending recreational yard time, his back seized up. (*Id*.) Defendants Stone, Dalton, and Dankfert all responded. (*Id*.) Dalton told Plaintiff to roll over. (*Id*.) Plaintiff replied that he could not because his back had seized. (*Id*.) Dalton acknowledged that she had read something in Plaintiff's records regarding his back. (*Id*.)

Stone told Dalton and Dankfert that Plaintiff was trying to sue officers and medical personnel. (*Id*.) Stone advised the nurses that he would "take care of it." (*Id*., PageID.16.) Dalton acquiesced. She and Dankfert walked away. (*Id*.)

Stone and three non-party corrections officers manhandled Plaintiff, cuffed him, and walked him into the housing unit. (*Id*.) Plaintiff suffered another back spasm. (*Id*.) The officers placed Plaintiff in a restraint chair and wheeled him in front of his cell. (*Id*.) At that time, Defendant Dankfert happened to walk by. (*Id*.) Dankfert advised Plaintiff to "[s]top all this complaining and take your punishment like a man." (*Id*.) Plaintiff was then taken into his cell where he was assaulted by Officers Stone, Amowolo, and Jones. Another unidentified officer video recorded the incident.[4] (*Id*.) The next day, Plaintiff was treated for his injuries by Dr. Crompton. (*Id*.)

Three weeks later, Plaintiff submitted another healthcare request for his back. (*Id*.) He complained of incontinence, debilitating muscle spasms, extreme pain, and numbness. (*Id*.) Plaintiff saw Defendant Mason that day. (*Id*., PageID.17.) She advised Plaintiff that because he

---

copayment for each medical visit absent an exceptional circumstance. One of the listed exceptional circumstances is "receiving . . . emergency medical care.". *Id*. ¶ G.

[4] Plaintiff has filed a separate suit against Stone, Amowolo, Jones, and the unidentified officer. *See Owens v. Stone*, No. 1:24-cv-192 (W.D. Mich.). Accordingly, the Court will not address those allegations in this action. The Court will consider Plaintiff's allegations regarding Dankfert's role in the incident.

had filed a grievance against her based on prior treatment, she would not provide plaintiff with pain medication. (*Id.*) Plaintiff reports that Mason conducted "a pretextual physical examination" and sent Plaintiff away without medication or a referral to see the doctor. (*Id.*) Plaintiff states that "[s]ince then [—a period of three years—he] has submitted numerous unanswered healthcare request forms and has filed numerous grievances requesting medication for back spasms, a back brace, x-rays, evaluation by a specialist, and a bottom bunk detail for his back injuries." (*Id.*)

Finally, Plaintiff alleges that Defendant Monroe is responsible for medical care generally at ECF and Defendant Bellinger is responsible for the direct supervision and management of the nursing staff. (*Id.*) Plaintiff also notes that Defendants Monroe, Bellinger, and Clouse have been put on notice of the unethical and dangerous conduct of Defendants Mason and Briske by Plaintiff's complaints and grievances and by the complaints and grievances of other inmates, yet Monroe, Bellinger, and Clouse have failed to take disciplinary action or otherwise protect the inmates. (*Id.*)

Plaintiff continues to suffer back pain, deal with mobility problems, and experience bouts of incontinence. (*Id.*) He has yet to receive adequate medical treatment for his back injury. (*Id.*)

Plaintiff seeks declaratory relief finding that the Defendants' conduct violated Plaintiff's Eighth Amendment rights and injunctive relief requiring a permanent bottom bunk detail and immediate appropriate treatment. (ECF No. 1-4, PageID.19.) Plaintiff also seeks compensatory and punitive damages. (*Id.*)

## IV.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's claims all arise out of the Eighth Amendment right to be free of cruel and unusual punishment. (Compl., ECF No. 1-4, PageID.19.) Plaintiff's allegations also implicate the protections of the First Amendment in that Plaintiff reports that some Defendants' actions against

Plaintiff were taken in retaliation for Plaintiff's participation in conduct protected by the First Amendment.

### A.      Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically

serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

It is against that backdrop that the Court will consider Plaintiff's claims against each Defendant.

### 1.    Candi Mason

Defendant Mason interacted with Plaintiff regarding his back injuries three times. First, on May 22, 2020, two days after the injury, she responded to Plaintiff's healthcare request with a self-care pamphlet and a statement explaining that the pandemic limited healthcare evaluations to only "serious medical concerns." (Compl, ECF No. 1-3, PageID.12.) Mason next saw Plaintiff almost a month later. She summoned Plaintiff in response to a healthcare request after Plaintiff's back "gave out" the night before. (*Id*., PageID.15.) Mason saw Plaintiff was walking, concluded his situation was not emergent, and advised him that he would have to pay the $5.00 copayment. Plaintiff was willing, but Mason declined to see him, indicating that she would just send him the self-care pamphlet. The final time that Plaintiff saw Mason, she summoned him on August 26, 2020, in response to another healthcare request regarding his back pain. (*Id*., PageID.17.) She "conducted a pretextual physical examination" and then refused to provide Plaintiff pain medication or a referral to the doctor. (*Id.*)

Back pain is not *per se* a serious medical need. Courts have looked to different supporting facts to conclude that back pain constitutes a serious medical need in a given case. For example,

in *Gunter v. Castineta*, 561 F. App'x 497 (6th Cir. 2014), the court concluded that back pain was a serious medical need because it was "diagnosed by a physician as mandating treatment," in that case, eventually surgery. *Id*. at 501; *see also id*. at 505 (Judge Clay, concurring in part) (noting that back pain so severe that it rendered the prisoner unable to walk constituted a serious medical need). In *Taylor v. Franklin Cnty., Ky.*, 104 F. App'x 531, 538 (6th Cir. 2004), the court relied on the facts that the prisoner had loss of feeling in his feet and legs and bouts of incontinence to conclude that he suffered a serious medical need. *See also Adkins v. Morgan Cnty., Tenn*., 798 F. App'x 858, 862 (6th Cir. 2020) (relying on statements of severe pain, an inability to walk, and incontinence to conclude that Plaintiff had shown a serious medical need). Likewise, in *Howell v. NaphCare, Inc*., 67 F.4th 302, 312 (6th Cir. 2023), the court concluded that a prisoner continuously falling to the ground, being unable to walk under his own power, and complaining about numbness and pain in his legs, contributed to the conclusion that the prisoner suffered a serious medical need.

It is not clear what symptoms Plaintiff presented to Mason during their first interaction; but the symptoms presented during the second and third interactions—an inability to move, muscle spasms, incontinence, extreme pain, and numbness—support an inference that Plaintiff suffered a serious medical need. Accordingly, the Court concludes that Plaintiff has adequately alleged the objective prong of the *Farmer* analysis with regard to Defendant Mason.

With regard to the subjective prong, Plaintiff has alleged no facts to support an inference that Mason was aware that Plaintiff was subject to a substantial risk of serious harm when she provided the initial written response to Plaintiff's first healthcare request. By the time Mason responded the second and third time, however, Plaintiff had already seen other healthcare professionals who concluded Plaintiff's condition was serious enough to require treatment and the symptoms Plaintiff presented supported an inference that his back condition was serious.

Accordingly, the Court concludes that Plaintiff has adequately alleged the subjective prong of the Farmer analysis with regard to Defendant Mason.

**2.    Addie Briske**

The next healthcare provider to treat Plaintiff was Defendant Briske. The symptoms Plaintiff presented to Briske included extreme pain, lack of mobility, and debilitating muscle spasms. Those symptoms might support an inference that Plaintiff suffered a serious medical need; but they were not the only information presented to Nurse Briske. Instead, Corrections Officer McGlone informed Briske that he had seen Plaintiff exercising his upper body on the yard and jumping off a top bunk.

Plaintiff alleges that McGlone was lying. The Court accepts that allegation as true. But Plaintiff does not allege that Nurse Briske knew that McGlone was lying. Thus, Nurse Briske had reason to conclude that Plaintiff's report of symptoms was not accurate. Based on the information available to Nurse Briske, Plaintiff might have suffered a back injury, but his ability to exercise and jump off a top bunk supported the inference that the injury was not serious. Nurse Briske's examination of Plaintiff offered no new facts to the contrary. As she probed Plaintiff's back, he pulled away and, ultimately, terminated the evaluation.

Based on Plaintiff's allegations, even if Plaintiff was suffering a serious medical need when he saw Briske, the facts alleged do not support an inference that Nurse Briske was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exis[ed], and . . . dr[e]w the inference." *Farmer*, 511 U.S. at 837. Accordingly, the Court concludes that Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against Nurse Briske.

14

### 3.     Nathan McGlone

Plaintiff alleges that Defendant McGlone attended two of Plaintiff's healthcare appointments. The first with Nurse Briske, described above, and the second with Nurse Doan on June 9. Plaintiff reports that McGlone told the same lies at both appointments. Nurse Briske relied on McGlone's report to deny care; Nurse Doan noted McGlone's report in the comments of her report, but provided medication and scheduled a doctor's appointment anyway.

Accepting as true Plaintiff's allegation that McGlone was lying, the allegations support an inference that McGlone was aware that Plaintiff suffered from a serious medical need. Moreover, McGlone's conduct would fall squarely within *Estelle's* description of "prison guards . . . intentionally denying or delaying access to medical care or intentionally interfering with the treatment," 429 U.S. at 104–05. That is no less deliberate indifference to a serious medical need than is a doctor's complete failure to respond to a prisoner's medical needs. Accordingly, the Court concludes that Plaintiff's Eighth Amendment deliberate indifference claims against Defendant McGlone cannot be dismissed upon preliminary review.

### 4.     Unknown Dalton

Plaintiff reports that, on August 3, 2020, his back seized up while attending recreational yard time. Defendant Sergeant Stone, Defendant Nurse Practitioner Unknown Dalton, and Defendant Registered Nurse Unknown Dankfert responded. (Compl., ECF No. 1-3, PageID.15.) Dalton instructed Plaintiff to get up. Plaintiff stated that he could not because his back had seized. Dalton replied "I read something on your records about that." (*Id.*) Stone then informed Dalton that Plaintiff was trying to file a lawsuit on Stone's officers as well as medical personnel. He advised Dalton that he, Stone, would take care of Plaintiff. Dalton acquiesced and she and Dankfert walked away.

Falling to the ground with a seized back and being unable to get up provides some evidence of a serious medical need. Nurse Dalton's comment about some familiarity with Plaintiff's record might bolster that conclusion—or it might counter it if Dalton was familiar with the repetition of McGlone's lies. Nonetheless, the Court will give Plaintiff the benefit of every doubt and proceed with the inference that Plaintiff suffered a serious medical need and that Dalton was aware of that need.

The facts alleged also support the inference that Dalton was deliberately indifferent to that need. Despite perceiving Plaintiff's serious medical need, Dalton walked away, apparently yielding Plaintiff's medical care to custody staff. Accordingly, the Court concludes that Plaintiff's allegations are sufficient to survive preliminary review.

### 5.    Unknown Dankert

Defendant Dankert's actions (or inaction) in the yard paralleled Defendant Dalton's. Accordingly, for the same reason the Court concludes that Plaintiff's allegations suffice to state a claim against Dalton with regard to that conduct, he states a claim against Dankert as well.

Moreover, Defendant Danker's contact with Plaintiff did not end in the yard. After the corrections officers, including Defendant Stone, roughly transported Plaintiff into the housing unit he yelled for medical attention. The officers placed him in a restraint chair and wheeled him in front of his cell. It is there that Defendant Dankfert confronted Plaintiff again. Dankfert stated: "Stop all this complaining and take your punishment like a man." (*Id*., PageID.16.)[5] Based on

---

[5] Plaintiff's "punishment" included an assault involving all four of the corrections officers mentioned in this complaint. The nature of the assault is detailed in another suit that Plaintiff has filed in this Court, *Owens v. Stone*, No. 1:24-cv-192 (W.D. Mich.). After reading both complaints, the Court concludes that Plaintiff's allegations against Stone in the present case are limited to Stone's interference with Plaintiff's treatment for the back seizure on August 26, 2020. The rough handling and subsequent assault are the focus of Plaintiff's more recent complaint filed in action no. 1:24-cv-192.

Plaintiff's allegations, the Court infers that Plaintiff suffered a serious medical need at that time, Dankfert was aware of that need, and Dankfert not only failed to address that need, but instead left Plaintiff to suffer "punishment." Accordingly, the Court concludes that Plaintiff has adequately alleged the objective and subjective prongs and stated an Eighth Amendment deliberate indifference claim against Defendant Dankfert with regard to this incident as well.

### 6. Unknown Stone

Plaintiff's allegations support the inference that Defendant Stone offered to address Plaintiff's serious medical needs in the yard on August 26, 2020. Stone did not follow through. Instead, he and three corrections officers roughly handled and then assaulted Plaintiff. The part of Stone's actions that resulted in Plaintiff not receiving medical attention for his back seizure falls squarely within *Estelle*'s description of "prison guards . . . intentionally denying or delaying access to medical care or intentionally interfering with the treatment," 429 U.S. at 104–05. Accordingly, the Court concludes that Plaintiff has stated an Eighth Amendment deliberate indifference claim against Defendant Stone.

### 7. Unknown Clouse, Nicki Monroe, and Jack Bellinger

Plaintiff's allegations against the remaining three Defendants are scant:

69. Defendant Monroe is responsible for medical care generally at Oaks Correctional Facility.

70. Defendant Bellinger is responsible for the direct supervision and management of the nursing staff.

71. Defendants Monroe, Bellinger and Clouse have long been placed on notice of the unethical and dangerous conduct of defendants Mason and Briske by a number of complaints and grievances from the plaintiff as well as other inmates, but ha[ve] failed to take disciplinary action against them or otherwise protect inmates from the reckless behavior of defendants Mason and Briske.

(Compl., ECF No. 1-3, PageID.17.)

Plaintiff fails to allege that any of these Defendants took any action against him, other than to suggest that Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that either of these three Defendants encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendants were personally involved in the events surrounding Plaintiff's treatment for his back during the summer of 2020. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Clouse, Monroe, and Bellinger are premised on nothing more than respondeat superior liability, his action fails to state a claim against them.

### B.      First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff does not expressly mention the First Amendment, but several of his allegations implicate the protection afforded by the amendment. For example, in paragraph 42, Plaintiff reports that Defendant Mason refused to evaluate Plaintiff's complaints of back pain because she

knew Plaintiff was trying to sue Nurse Briske. (Compl., ECF No. 1-3, PageID.15.) And in paragraph 51, Plaintiff reports that Defendant Stone talked Defendant Dalton into letting Stone "take care" of Plaintiff because Plaintiff was trying to file a lawsuit against one of Stone's officers and medical personnel. (*Id*., PageID.16.) Then, finally, Plaintiff reports that Mason conducted a "pretextual physical examination" and refused to give Plaintiff medication or refer him to a doctor because she knew he had filed a grievance against her. (*Id*., PageID.17.)

"[G]rievances and lawsuits against prison officials [are] undisputedly protected conduct." *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013). Moreover, the rough handling and assault by Stone and the denial of medical care by Mason are plainly the sort of adverse action that might deter a person of ordinary firmness from participating in protected conduct. *See, e.g., Kelly v. Labelle*, No. 2:20-cv-49, 2022 WL 181440876, at *5 (W.D. Mich. Dec. 2, 2022), report and recommendation adopted, 2023 WL 122198 (Jan. 6, 2023) (stating that "[c]ertainly, allegations regarding the excessive use of force can qualify as adverse action"); *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (noting that "delay in treatment and discontinuance of medication would likely deter a prisoner"). Moreover, Defendant Mason tied the adverse action to the protected conduct each time she threatened to interfere or interfered with Plaintiff's medical treatment and Defendant Stone specifically referenced Plaintiff's filing of a lawsuit as the motivator for him to "take care" of Plaintiff. Accordingly, the Court concludes that Plaintiff has stated First Amendment retaliation claims against Defendants Mason and Stone, as described above.

### C.    Interference with Plaintiff's Grievance

Plaintiff mentions that he filed a grievance against Defendant McGlone for providing false information to healthcare staff. Plaintiff noted that Defendant Stone conducted the Step I grievance

interview and that Stone's participation and his conduct during the two interview sessions was inappropriate. Those allegations do not give rise to any constitutional claim.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Stone did not deprive him of due process.

Moreover, Defendant Stone did not violate Plaintiff's First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendant Stone's actions have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from pursuing his

grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable federal claim relating to Stone's actions in processing Plaintiff's grievance against McGlone.

## Conclusion

For the reasons set forth above, the Court will remove this case from mediation and lift the stay that was entered to facilitate mediation. Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's claims against Defendants Briske, Bellinger, Monroe, and Clouse will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, any claim Plaintiff intends to raise against Defendant Stone relating to the processing of Plaintiff's grievance against Defendant McGlone. Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Mason, McGlone, Dalton, Dankfert, and Stone and Plaintiff's First Amendment retaliation claims against Defendants Mason and Stone remain in the case.

An order consistent with this opinion will be entered.


Dated:   <u>    March 6, 2024    </u>              <u>  /s/ Robert J. Jonker    </u>
                                                Robert J. Jonker
                                                United States District Judge