UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANGELO JARMAL OWENS,

    Plaintiff,

v.

ADDIE BRISKE, *et al.*,

    Defendants.
_____/

Case No. 1:23-cv-784

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by D'Angelo Jarmal Owens (sometimes referred to as "Owens"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff complains about incidents which occurred at the Oaks Correctional Facility (ECF) and sued the following ECF personnel: Nurses Addie Briske, Candi Mason, and Dankfert (Dankert); Nurse Practitioner Dalton; Nurse Supervisor Jack Bellinger; Health Unit Manager (HUM) Nicki Monroe; Corrections Officer (CO) Nathan McGlone; Sergeant Stone; and Assistant Deputy Warden (ADW) Clouse. Opinion (ECF No. 7, PageID.50). This matter is now before the Court on Defendants Mason and Stone's motion for partial summary judgment on the basis of exhaustion (ECF No. 37).

**I.**     **Background**

The Court summarized plaintiff's complaint as follows[1]:

> Plaintiff alleges that Corrections Officer Rucker shut Plaintiff in his cell door on May 20, 2020. (Compl., ECF No. 1-3, PageID.12, ¶¶ 1-10.) That incident

---

[1] The Court notes that plaintiff filed a form complaint (ECF No. 1), an exhibit with defendants' names (ECF No. 1-1), an exhibit with "Defendant Party Information" (ECF No. 1-2), an exhibit with a 74-paragraph "Statement of Claim" (ECF No. 1-3), and an exhibit with his "Relief Requested" (ECF No. 1-4).

1

is the subject of a separate lawsuit against Rucker. *Owens v. Briske*, No. 1:22-cv-443 (W.D. Mich.). The present lawsuit focuses on the Defendants' subsequent deliberate indifference to the injuries Plaintiff suffered when he was pinned by the closing cell door.

After the incident on May 20, Plaintiff immediately submitted a healthcare request form for injuries to his back. (Compl., ECF No. 1-3, PageID.12.) Defendant Mason was the first to respond. She sent Plaintiff a self-care pamphlet along with a written statement explaining that, due to the COVID-19 state of emergency, only serious medical concerns would be evaluated. (*Id*.)

Dissatisfied with Mason's response, Plaintiff immediately submitted another healthcare request form. (*Id*.) An appointment was scheduled for May 29, 2020, with Defendant Briske. (*Id*., PageID.13.) Defendant McGlone also attended the healthcare appointment. (*Id*.)

When Plaintiff arrived at the appointment, Defendant Briske informed Plaintiff that Defendant McGlone told Briske that McGlone directly observed Plaintiff exercising his upper body on the yard and jumping off the top bunk. (*Id*.) Based on that information, Briske informed Plaintiff that she believed Plaintiff was "faking." (*Id*.)

Plaintiff told Briske that McGlone was lying, to no avail. (*Id*.) Her examination was particularly rough and caused Plaintiff pain. (*Id*.) At one point, Plaintiff brushed Briske's hand away. (*Id*.) Briske threatened to write a misconduct report if Plaintiff touched her again. (*Id*.) Plaintiff advised Briske that he would rather see the doctor and asked for some pain medication. (*Id*., PageID.14.) Briske refused to supply any pain medication or schedule an appointment with the doctor. (*Id*.)

The next day, Plaintiff submitted another healthcare request. (*Id*.) Apparently, pursuant to that request, Plaintiff was scheduled for a June 9, 2020, appointment with Nurse Doan. (*Id*.) Nurse Doan conducted a physical examination, provided Plaintiff pain medication, and scheduled an appointment with the doctor. (*Id*.)

McGlone again attended the appointment. Plaintiff reports that McGlone again lied to the nurse about seeing Plaintiff "working out on the small yard." (*Id*.) Nurse Doan agreed to put the comments in the report, but did not alter the medication decision or the decision to schedule an appointment with the doctor. (*Id*.)

Plaintiff was treated by Dr. Crompton on June 12, 2020. Dr. Crompton prescribed pain medication and provided Plaintiff a special accommodation detail for a bottom bunk. (*Id*.)

On June 15, 2020, Plaintiff filed a grievance against Defendant McGlone for providing false information to healthcare staff and conspiring with others to deny Plaintiff medical care. (*Id.*) Defendant Stone pulled Plaintiff out for a Step I grievance interview on two separate occasions. (*Id.*) Plaintiff contends that Stone attempted to intimidate Plaintiff into "signing off" on the grievance filed against Defendant McGlone. (*Id.*)

Plaintiff's back problem flared up again in the middle of July. On the morning of July 15, 2020, Plaintiff sent a healthcare request seeking treatment because his back had "gave out the night before." (*Id.*, PageID.15.) Within two hours, Defendant Mason summoned Plaintiff to discuss the problem. (*Id.*) Plaintiff explained that he was concerned that he might fall and hit his head if his back continued to give out. Mason noted that Plaintiff was able to walk and, thus, must be doing better. (*Id.*) Plaintiff acknowledged that his condition had improved from the night before. (*Id.*) Apparently based on that improvement, Mason determined that Plaintiff's condition was not emergent and would not evaluate Plaintiff until he paid the $5.00 copayment. (*Id.*) Plaintiff offered to pay, but even then Mason declined to see him, indicating that she would simply give Plaintiff a self-care pamphlet with exercises. (*Id.*)

On August 3, 2020, while Plaintiff was attending recreational yard time, his back seized up. (*Id.*) Defendants Stone, Dalton, and Dankfert all responded. (*Id.*) Dalton told Plaintiff to roll over. (*Id.*) Plaintiff replied that he could not because his back had seized. (*Id.*) Dalton acknowledged that she had read something in Plaintiff's records regarding his back. (*Id.*)

Stone told Dalton and Dankfert that Plaintiff was trying to sue officers and medical personnel. (*Id.*) Stone advised the nurses that he would "take care of it." (*Id.*, PageID.16.) Dalton acquiesced. She and Dankfert walked away. (*Id.*)

Stone and three non-party corrections officers manhandled Plaintiff, cuffed him, and walked him into the housing unit. (*Id.*) Plaintiff suffered another back spasm. (*Id.*) The officers placed Plaintiff in a restraint chair and wheeled him in front of his cell. (*Id.*) At that time, Defendant Dankfert happened to walk by. (*Id.*) Dankfert advised Plaintiff to "[s]top all this complaining and take your punishment like a man." (*Id.*) Plaintiff was then taken into his cell where he was assaulted by Officers Stone, Amowolo, and Jones. Another unidentified officer video recorded the incident. (*Id.*) The next day, Plaintiff was treated for his injuries by Dr. Crompton. (*Id.*)

Three weeks later, Plaintiff submitted another healthcare request for his back. (*Id.*) He complained of incontinence, debilitating muscle spasms, extreme pain, and numbness. (*Id.*) Plaintiff saw Defendant Mason that day. (*Id.*, PageID.17.) She advised Plaintiff that because he had filed a grievance against her based on prior treatment, she would not provide plaintiff with pain medication. (*Id.*) Plaintiff reports that Mason conducted "a pretextual physical examination" and sent Plaintiff

3

> away without medication or a referral to see the doctor. (*Id*.) Plaintiff states that "[s]ince then [—a period of three years—he] has submitted numerous unanswered healthcare request forms and has filed numerous grievances requesting medication for back spasms, a back brace, x-rays, evaluation by a specialist, and a bottom bunk detail for his back injuries." (*Id*.)
>
> Finally, Plaintiff alleges that Defendant Monroe is responsible for medical care generally at ECF and Defendant Bellinger is responsible for the direct supervision and management of the nursing staff. (*Id*.) Plaintiff also notes that Defendants Monroe, Bellinger, and Clouse have been put on notice of the unethical and dangerous conduct of Defendants Mason and Briske by Plaintiff's complaints and grievances and by the complaints and grievances of other inmates, yet Monroe, Bellinger, and Clouse have failed to take disciplinary action or otherwise protect the inmates. (*Id*.)
>
> Plaintiff continues to suffer back pain, deal with mobility problems, and experience bouts of incontinence. (*Id*.) He has yet to receive adequate medical treatment for his back injury. (*Id*.)
>
> Plaintiff seeks declaratory relief finding that the Defendants' conduct violated Plaintiff's Eighth Amendment rights and injunctive relief requiring a permanent bottom bunk detail and immediate appropriate treatment. (ECF No. 1-4, PageID.19.) Plaintiff also seeks compensatory and punitive damages. (*Id*.)

Opinion at PageID.50-54 (footnotes omitted).

The Court dismissed defendants Nurse Briske, Nurse Supervisor Bellinger, HUM Monroe, and ADW Clouse. *Id*. at PageID.69. The Court also dismissed, for failure to state a claim, "any claim Plaintiff intends to raise against Defendant Stone relating to the processing of Plaintiff's grievance against Defendant McGlone." *Id*. Finally, the Court concluded that

> Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Mason, McGlone, Dalton, Dankfert, and Stone and Plaintiff's First Amendment retaliation claims against Defendants Mason and Stone remain in the case.

*Id*. As discussed, defendants Nurse (RN) Mason and Sgt. Stone have moved for partial summary judgment on the basis of exhaustion (ECF No. 37).

4

## II. Summary Judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

5

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within

6

five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

Defendants contend that plaintiff did not exhaust some of his claims against RN Mason and Sgt. Stone. Defendants' brief identifies seven "claims" alleged by plaintiff in his "Statement of Claim" (ECF No. 1-3):

> 1. After Owens injured his back on May 20, 2020, when a non-defendant CO closed the cell door on him, he kited healthcare, but RN Mason responded and did not provide treatment;
>
> 2. CO Nathan McGlone attended Owens' May 29 and June 9, 2020, healthcare appointments to assess his injuries, and that during the appointment, CO McGlone falsely told healthcare staff that he was faking his injuries and had been working out in the yard;
>
> 3. On June 25 and 27, 2020, Sgt. Stone tried to intimidate Owens into signing off on grievances he filed against CO McGlone;
>
> 4. On July 15, 2020, Owens kited healthcare when his back problem flared up, but RN Mason did not provide treatment because of his previous complaints against healthcare staff;
>
> 5. On August 3, 2020, Owens's [sic] back seized up while he was in the recreational yard, and NP Dalton and RN Dankert refused to provide treatment;

>6. Also on August 3, 2020, Sgt. Stone and non-party COs assaulted him; and

>7. On August 26, 2020, RN Mason saw him for a healthcare visit regarding his back and she refused to provide treatment because he had previously filed a grievance against her.

Defendants' Brief (ECF No. 38, PageID.297-298) (internal footnote omitted).  The Court will utilize defendants' enumeration of the seven claims in this report.

###    a.    RN Mason (Claims 1, 4 and 7)

RN Mason contends that plaintiff did not exhaust claim 1 ("did not file Step III grievance"), concedes that plaintiff exhausted claim 4, and contends that plaintiff did not exhaust claim 7 ("grievance was rejected").  Defendants' Brief at PageID.307 (*see* chart).  RN Mason seeks summary judgment as to claims 1 and 7.  *Id.* at PageID.309-310.  In his response, "Plaintiff concedes that he failed to exhaust claims 1 & 7 against Defendant Mason."  *See* Plaintiff's Response (ECF No. 40, PageID.314).  Accordingly, RN Mason's motion for partial summary judgment should be granted as to claims 1 and 7.

###    b.    Sgt. Stone (Claims 3 and 6)

Sgt. Stone contends that Owens did not exhaust claim 3 ("did not file Step III grievance") and concedes that Owens exhausted claim 6.  *See* Defendants' Brief at PageID.307 (*see* chart).  Sgt. Stone seeks summary judgment as to claim 3.  *Id.* at PageID.309-310.  In his response, plaintiff concedes that "he also failed to exhaust claim no. 3 against Defendant Stone."  Plaintiff's Response at PageID.314.  Accordingly, Sgt. Stone's motion for partial summary judgment should be granted as to claim 3.

      **c.**      **Remaining claims**

If the Court adopts the undersigned's recommendation, then this lawsuit will consist of the following: Claim 2 (CO McGlone)[2]; Claim 4 (RN Mason); Claim 5 (NP Dalton and RN Dankert)[3]; and, Claim 6 (Sgt. Stone).

      **IV.**      **Recommendation**

For these reasons, I respectfully recommend that defendants Mason and Stone's motion for partial summary judgment (ECF No. 37) be **GRANTED**, and that Claims 1 and 7 directed at defendant Mason and Claim 3 directed at defendant Stone be **DISMISSED**.

Dated: November 12, 2025                                          /s/ Ray Kent
                                                                                 RAY KENT
                                                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] The Court notes that defendants' brief (PageID.310) incorrectly identifies Claim 2 as directed against Sgt. Stone as set forth in Grievance ECF 2020-06-731-17A ("731") (ECF No. 14-3, PageID.175-178). Grievance 731 is directed against CO McGlone. *Id*. As discussed, *supra,* Claim 2 is directed at CO McGlone.

[3] The Court notes that NP Dalton is not an employee of the Michigan Department of Corrections and has filed her own motion for summary judgment (*see* ECF No. 45).