UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANGELO JARMAL OWENS,

        Plaintiff,

v.

ADDIE BRISKE, *et al.*,

        Defendants.

                              /

Case No. 1:23-cv-784

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by D'Angelo Jarmal Owens, a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff complains about incidents which occurred at the Oaks Correctional Facility (ECF). The Court addressed some of plaintiff's claims in a previous report and recommendation (R&R) entered on November 12, 2025 (ECF No. 46). This matter is now before the Court on a motion for summary judgment filed by defendant Nurse Practitioner (NP) Dalton (ECF No. 45).[1]

**I.      Background**

Plaintiff claims that on August 3, 2020, NP Dalton was deliberately indifferent to his back condition. The Court summarized plaintiff's complaint[2] in relevant part as follows:

---

[1] By way of background, this case was stayed and administratively closed due to a bankruptcy filing. *See* Order (ECF No. 34). On May 21, 2025, the Court re-opened the case (ECF No. 35) and entered an amended case management order (CMO) (ECF No. 36). NP Dalton filed this motion for summary judgment under the deadlines set in the amended CMO. NP Dalton's motion for summary judgment was fully briefed before the Court entered the second amended CMO (ECF No. 51).

[2] The Court notes that plaintiff filed a form complaint (ECF No. 1), an exhibit with defendants' names (ECF No. 1-1), an exhibit with "Defendant Party Information" (ECF No. 1-2), an exhibit with a 74-paragraph "Statement of Claim" (ECF No. 1-3), and an exhibit with his "Relief Requested" (ECF No. 1-4).

1

Plaintiff alleges that Corrections Officer Rucker shut Plaintiff in his cell door on May 20, 2020. (Compl., ECF No. 1-3, PageID.12, ¶¶ 1-10.) That incident is the subject of a separate lawsuit against Rucker. *Owens v. Briske*, No. 1:22-cv-443 (W.D. Mich.). The present lawsuit focuses on the Defendants' subsequent deliberate indifference to the injuries Plaintiff suffered when he was pinned by the closing cell door.

Opinion at PageID.50.  Plaintiff obtained medical treatment from Dr. Crompton on June 12, 2020.

*Id*. at PageID.50-52.   At that time, "Dr. Crompton prescribed pain medication and provided

Plaintiff a special accommodation detail for a bottom bunk."  *Id*. at PageID.52.

Plaintiff's back problem flared up again in the middle of July. On the morning of July 15, 2020, Plaintiff sent a healthcare request seeking treatment because his back had "gave out the night before." (*Id*., PageID.15.) Within two hours, Defendant Mason summoned Plaintiff to discuss the problem. (*Id*.) Plaintiff explained that he was concerned that he might fall and hit his head if his back continued to give out. Mason noted that Plaintiff was able to walk and, thus, must be doing better. (*Id*.) Plaintiff acknowledged that his condition had improved from the night before. (*Id*.) Apparently based on that improvement, Mason determined that Plaintiff's condition was not emergent and would not evaluate Plaintiff until he paid the $5.00 copayment. (*Id*.) Plaintiff offered to pay, but even then Mason declined to see him, indicating that she would simply give Plaintiff a self-care pamphlet with exercises. (*Id*.)

On August 3, 2020, while Plaintiff was attending recreational yard time, his back seized up. (*Id*.) Defendants Stone, Dalton, and Dankfert all responded. (*Id*.) Dalton told Plaintiff to roll over. (*Id*.) Plaintiff replied that he could not because his back had seized. (*Id*.) Dalton acknowledged that she had read something in Plaintiff's records regarding his back. (*Id*.)

Stone told Dalton and Dankfert that Plaintiff was trying to sue officers and medical personnel. (*Id*.) Stone advised the nurses that he would "take care of it." (*Id*., PageID.16.) Dalton acquiesced. She and Dankfert walked away. (*Id*.)

Stone and three non-party corrections officers manhandled Plaintiff, cuffed him, and walked him into the housing unit. (*Id*.) Plaintiff suffered another back spasm. (*Id*.) The officers placed Plaintiff in a restraint chair and wheeled him in front of his cell. (*Id*.) At that time, Defendant Dankfert happened to walk by. (*Id*.) Dankfert advised Plaintiff to "[s]top all this complaining and take your punishment like a man." (*Id*.) Plaintiff was then taken into his cell where he was assaulted by Officers Stone, Amowolo, and Jones. Another unidentified officer video recorded the incident. (*Id*.) The next day, Plaintiff was treated for his injuries by Dr. Crompton. (*Id*.)

2

*Id*. at PageID.53 (footnotes omitted).

> Plaintiff seeks declaratory relief finding that the Defendants' conduct violated Plaintiff's Eighth Amendment rights and injunctive relief requiring a permanent bottom bunk detail and immediate appropriate treatment. (ECF No. 1-4, PageID.19.) Plaintiff also seeks compensatory and punitive damages. (*Id*.)

*Id*. at  PageID.54.  Plaintiff's claim against NP Dalton was set out in the previous R&R as Claim 5, *i.e.*, "On August 3, 2020, Owens's [sic] back seized up while he was in the recreational yard, and NP Dalton and RN Dankert refused to provide treatment[.]"  R&R (ECF No. 46, PageID.398).

## II.    Motion for Summary Judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support

> plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  For purposes of this opinion, the Court notes that plaintiff filed a verified complaint "under penalty of perjury" (*see* PageID.4).  *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (allegations in a verified complaint "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment." (internal quotation marks omitted).

### B.    Eighth Amendment claim

### 1.    Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (l976).  A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and

if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted). "[T]his care qualifies as 'cruel and unusual' only if it is 'so grossly incompetent' or 'so grossly inadequate' as to 'shock the conscience' or 'be intolerable to fundamental fairness.'" *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). "For prisoners to prove grossly inadequate care, moreover, courts generally require them to introduce medical evidence, typically in the form of expert testimony." *Id*. In short, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an 8th Amendment violation. *Id*. at 835. "It is obduracy and

5

wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

### 2.    Plaintiff's claim

In its initial review, the Court found that plaintiff alleged sufficient facts to state an Eighth Amendment claim against NP Dalton (referred to as "Unknown Dalton"):

> Plaintiff reports that, on August 3, 2020, his back seized up while attending recreational yard time. Defendant Sergeant Stone, Defendant Nurse Practitioner Unknown Dalton, and Defendant Registered Nurse Unknown Dankfert responded. (Compl., ECF No. 1-3, PageID.15.) Dalton instructed Plaintiff to get up. Plaintiff stated that he could not because his back had seized. Dalton replied "I read something on your records about that." (*Id*.) Stone then informed Dalton that Plaintiff was trying to file a lawsuit on Stone's officers as well as medical personnel. He advised Dalton that he, Stone, would take care of Plaintiff. Dalton acquiesced and she and Dankfert walked away.

> Falling to the ground with a seized back and being unable to get up provides some evidence of a serious medical need. Nurse Dalton's comment about some familiarity with Plaintiff's record might bolster that conclusion—or it might counter it if Dalton was familiar with the repetition of McGlone's lies. Nonetheless, the Court will give Plaintiff the benefit of every doubt and proceed with the inference that Plaintiff suffered a serious medical need and that Dalton was aware of that need.

> The facts alleged also support the inference that Dalton was deliberately indifferent to that need. Despite perceiving Plaintiff's serious medical need, Dalton walked away, apparently yielding Plaintiff's medical care to custody staff. Accordingly, the Court concludes that Plaintiff's allegations are sufficient to survive preliminary review.

Opinion (ECF No. 7, PageID.62-63).

### 3.    Discussion

In her affidavit, NP Dalton summarized her August 3, 2020 encounter with plaintiff. *See* NP Dalton Aff. (ECF No. 45-2).  However, NP Dalton did not sign the affidavit.  *See* PageID.391.  Accordingly, the Court will not consider it.  Defendant NP Dalton also presented a copy of plaintiff's medical record entitled, "Nursing Note encounter performed at Yard" on August 3, 2020 at 16:05 (4:05 p.m.).  *See* Medical Record (ECF No. 45-1, PageID.372).  The attending nurse was defendant RN Christopher Dankert.  The record indicated that plaintiff was complaining of lower back pain, *i.e.*, "I need help rolling over and I need pain meds."  RN Dankert assessed that plaintiff had "Impaired comfort" with the following observation:

> Inmate laying flat on back in yard, legs bent at knees. Inmate uncooperative to verbal commands to get to feet and come to HC clinic for further evaluation.  NP Dalton on site and Sgt. Stone.  Inmate was able to walk to lower gallery, B lower and then again lowered self gently to floor. Inmate refused to speak with this nurse and would not cooperate for any further assessment.  Inmate returned to cell, advised to contact HC or custody if he wishes to be seen by nursing for lower back pain. Inmate verbally unresponsive.

*Id*.    The record indicates the plan and disposition of plaintiff's encounter at the Yard: "Education Provided"; "Follow-up at Sick Call as needed"; and, "Kite PRN".  *Id*.

Later that night (11:28 p.m.) plaintiff had an "Urgent/Emergent encounter" at the housing unit with non-party RN Melissa Lewis.  *See* Medical Record at PageID.374.  RN Lewis noted, "Custody staff reported that inmate was laying on floor and was unresponsive to verbal commands."  *Id*.  Upon examination, RN Lewis stated:

> Inmate maintained control of muscles. Supporting head when transferred, moved feet while in wheelchair.
>
> Inmate had opened his eyes a couple times for a brief second then close them, his eyes were still moving under his eye lids.

> Inmate was placed in cell on base so custody staff could monitor more closely and would notify HC of any changes. Approximately 2353 [11:53 p.m.] inmate was seen sneezing but would not respond to verbal commands.

PageID.374. During the encounter, RN Lewis noted that plaintiff had a "[s]mall abrasion to right eyebrow, not currently bleeding but does have a small amount of dried blood near it." PageID.375. NP Dalton was notified and plaintiff was scheduled for a medical provider add-on the next day. *Id*. NP Lewis further notes, "[e]arlier in the day [plaintiff] would not verbally respond to staff either per NP Dalton." *Id*.

The next morning, Dr. Crompton examined plaintiff based on the following musculoskeletal complaint:

> States he was doing pull-ups yesterday, and heard a pop, which he is reporting that he thought was from a button. Shortly after, he felt a severe pain to his lower back, radiating up the spine to the mid back. He laid down, and had difficulty getting up, which he attributes to lower back spasms. He has had persistent spasms since then, in addition to a hA over the R eye. The later he attributes to his head hitting the wall ~4PM yesterday, which was reported to have occurred "when custody pushed me into the wall."

*Id*. at PageID.376.  Plaintiff had a normal musculoskeletal exam which indicated low back pain. *Id*.  Plaintiff was provided with acetaminophen, and

> Advised that he appears to have strained his back, as well as a peri-orbit contusion. The best course of action is to allow the body to heal. . .

*Id*.

In his response, plaintiff included an affidavit in which stated as follows.  On August 3, 2020, he was attempting to perform a pull-up in the yard when he heard a pop sound, fell to the ground, and experienced back spasms "so severe I could not stand, walk, or roll over." Owens Aff. (ECF No. 47-2, PageID.410.  He laid on the ground "for at least 15 minutes" before NP Dalton or RN Dankert arrived. *Id*. NP Dalton told him, "'Get up and roll over', after I informed

her that I physically could not because my back had seized up, she said 'I read something on your records about that'." *Id*. Plaintiff further stated,

> 5. Before I could respond to Ms. Dalton's statement Mr. [Sgt.] Stone interjected himself into the conversation by stating "Owens is just trying to file a lawsuit on one of my officers and medical personnel. Don't mind him just let me take care of it."
>
> 6. Ms. Dalton responded to Mr. Stone by saying, "Okay, Sounds good to me because I'm busy."

*Id*. Plaintiff further stated that, "[a]t no time during the incident on August 3, 2020, did I refuse medical treatment from Ms. Dalton; nor, did I refuse to communicate with Ms. Dalton or Mr. Dankfert." *Id*. at PageID.411.

Plaintiff has failed to demonstrate that NP Dalton was deliberately indifferent to a serious medical need. Assuming that plaintiff had back pain while on the yard on August 3, 2020, it is uncontested that medical staff attended to him. RN Dankfert examined plaintiff, noted his discomfort, observed him walk back to housing, and developed a plan for him to follow up with healthcare as needed. There is no evidence that plaintiff experienced a medical condition or emergency which required the additional intervention of NP Dalton. Later that evening, staff took plaintiff to health care, where he was examined and monitored. After consulting with NP Dalton, the treating nurse scheduled plaintiff to see Dr. Crompton the next day. As discussed, Dr. Crompton concluded that plaintiff had low back pain and provided him with pain medication (acetaminophen). Based on this record, NP Dalton did not act with a "culpable state of mind, equivalent to criminal recklessness" sufficient to violate plaintiff's Eighth Amendment rights. *See Santiago*, 734 F.3d at 591. Accordingly, NP Dalton's motion for summary judgment should be granted.

### III.    Recommendation

Accordingly, I respectfully recommend that defendant NP Dalton's motion for summary judgment (ECF No. 45) be **GRANTED** and that Dalton be **dismissed** from this action.

Dated: May 7, 2026                          /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).